**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SANDRA FAYEWICZ,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **REDNER'S MARKETS, INC.,** | : | |
| **Defendant.** | : | **No. 09-2596** |

**M E M O R A N D U M**

SITARSKI, M.J.                                                          April 23, 2010

Currently pending before the Court is a motion for summary judgment filed by

Defendant Redner's Markets Inc.  For the following reasons, the motion will be GRANTED.

## I.    INTRODUCTION

Plaintiff, Sandra Fayewicz ("Plaintiff"), initiated this lawsuit against her former

employer, Redner's Markets Inc. ("Redner's"), on June 9, 2009, alleging that her employment

was terminated in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621

("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), and the Pennsylvania

Human Relations Act, 43 P. S. §955(a).

This matter initially was assigned to District Court Judge C. Darnell Jones, II, and on

November 5, 2009, the parties consented to the exercise of jurisdiction by a United States

Magistrate Judge under 28 U.S.C. 636(c) and Fed.R.Civ.P. 73.  (Doc. No. 12).  This matter was

then referred to me by Judge Jones on November 10, 2009.  (Doc. No. 13).  Thereafter, on

February 19, 2010, following completion of discovery, Defendant filed the instant Motion for

Summary Judgment.  (Doc. No. 21).

Defendant moves for summary judgment on the grounds that Plaintiff has failed to put forward a *prima facie* case of age discrimination, sex discrimination, or retaliation. *See* Defendant's Mot. for Summ. J. at 2. On February 25, 2010, Plaintiff filed its opposition to Defendant's motion and on April 8, 2010, I heard oral argument on Defendant's motion. Accordingly, this matter is now ripe for disposition.

## II.      BACKGROUND

Plaintiff is a 53 year old native of Reading, PA. Pl.'s Dep. at 13. Plaintiff began her employment with Defendant in March 1993, as a cashier. *Id.* at 14. She initially was hired to work at Defendant's store located on Carsonia Avenue; in 1995, she was promoted to Store Bookkeeper, for Defendant's Store 93 located in Reading, Pennsylvania. Plaintiff held this position until May 13, 2008, when Defendant terminated her employment. Pl.'s Dep. at 21-22. Plaintiff's direct supervisors at Store 93 were William Eshbach, Director of Store 93, and in his absence Tony Cavalieri (Manager), or Kyle Bowers (Grocery Manager). Pl.'s Dep. at 99, 122-23. Plaintiff also reported to Deb Lauer, Supervisor of Front End Operations for Defendant. Lauer is a corporate office employee who supervised all Bookkeepers at Defendant's stores. Pl.'s Dep. at 64, 68-69, 71, 99, 107.

During Plaintiff's 15 years of full time employment with Defendant, she received positive employment reviews. Twice during her employment with Defendant, Plaintiff received an Employee of the Year Award, in 2002 and in 2007. Pl.'s Dep. at 55. Store Director Eshbach, who oversees day-to-day operations, Eshbach Dep. at 6-7, chose Plaintiff as Employee of the Year in 2007, Eshbach Dep. at 15-16, because he felt Plaintiff was a good employee who

performed her job well.  Eshbach Dep. at 18.

However, on May 14, 2008, Plaintiff was terminated from her position at Defendant's store.

## A.    The "Change" Incident.

As noted, Plaintiff was terminated from Redner's on May 14, 2008, following a disagreement with a customer.  That disagreement led to an incident involving Plaintiff and acting store manager, Kyle Bowers.  For several months prior to May 2008, a man came in to Defendant's Store 93 on a regular basis bringing as much as $150.00 in paper money, and asking that the paper money be exchanged for coins.  Pl.'s Dep. at 174-175.  As Bookkeeper at Defendant's Store 93, Plaintiff was responsible for the change on hand at the store, so that when the man came into the store asking to change his paper currency, such requests were handled by Plaintiff.  Prior to May 13, 2008, Plaintiff had advised Store Director Eshbach that this particular customer was coming into the store asking for a large amount of change.  Eshbach Dep. at 20-21.

Defendant has no written policy dealing with customer requests to exchange paper money for coins, and Defendant's Director of Human Resources Robert McDonough testified that the verbal policy was left up to store management.  McDonough Dep. at 35.  Eshbach testified that he told Plaintiff to use her discretion as to whether to give the change to the customer, and if Plaintiff did not believe it was possible to make the change, for whatever reason, then the customer was to be informed that Plaintiff could not make the change.  Eshbach Dep. at 21-22, Pl.'s Dep. at 178.

On May 12, 2008, the customer came into the store and asked for change.  Plaintiff determined that she could not provide the change to the customer because she didn't have enough

3

change on hand to service the store, given that she was not expecting a delivery of change for another day or two. Pl.'s Dep. at 158. Plaintiff testified that when she informed the customer that she was not able to make change for him, he began swearing at her in a loud voice. Pl.'s Dep. at 182. Plaintiff testified that the customer told her that he wasn't going to accept denial of his request, because he wasn't going to take that answer from a woman. Pl.'s Dep. at 182-183. The customer insisted that Plaintiff get someone above her. *Id.* Normally, Plaintiff would have referred the customer to Store Director Eshbach, but Eshbach was not in the store that day. Pl.'s Amended Complaint at 4. Plaintiff therefore requested that Kyle Bowers, the Grocery Manager serving as the manager on duty that day, speak with the customer. *Id.* Bowers took the man to the front of the store, spoke with him and ultimately made the decision to give the customer the change he was requesting. *Id.*; Pl.'s Dep. at 146.

It is undisputed that Plaintiff and Bowers then began to argue over whether Bowers should have given the customer change when Plaintiff had already told the customer that Redner's could not accommodate him on that day. Pl.'s Dep. at 146. Plaintiff testified that she said to Bowers, "Why did you give him that money? It's against our policy. I said no, and you gave it to him anyway." Pl.'s Dep. at 146. Plaintiff testified that she may have also said "Why the hell did you do that? You shouldn't have done it; that's against our policy." Pl.'s Dep. at 151. Plaintiff further testified that she "probably" referred to the customer asking for change as a "son of a bitch." Pl.'s Dep. at 153. Plaintiff contends that while her tone with Bowers was loud, she was not screaming or disrespectful. Pl.'s Dep. at 167.

Following the incident with Bowers, Plaintiff phoned Defendant's Director of Front End Operations, Deb Lauer. Pl.'s Dep. at 148. Plaintiff relayed to Lauer her dissatisfaction with the

4

fact that Bowers had given the customer change after she had told the customer that the store could not make change for him. *Id.* Plaintiff testified that Lauer asked her to put Bowers on the phone so that Lauer could explain to him that "we don't sell change." *Id* at 149. Plaintiff testified that Lauer said to her "I know your angry with [Bowers] that he did this, I know we don't sell the change, calm down, I'm coming in [the store] tomorrow morning and me you and [Bowers] will talk about it. I told [Bowers] he shouldn't have done that." *Id.* at 150-51.

Lauer testified that she told Bowers that she understood that both he and Plaintiff were upset and that they should stay away from each other. Lauer Dep. at 14. Lauer also told Bowers that she would deal with the situation when she came into the store the following morning, but in the meantime "[Plaintiff] needs a break, just tell her to take a break." *Id.*

Plaintiff contends that this should have been the end of the incident, but "Bowers then decided to take the matter to another level when he spoke to VP of HR McDonough" about what had happened. Pl.'s Resp. to Mot. for Summ. J. at 8; Bowers' Dep. at 21. Bowers testified that he called McDonough because Plaintiff had threatened to have him fired for giving the customer change in violation of the store's change policy. *Id.* Bowers further testified that after relating his version of the incident to McDonough, McDonough told him to send Plaintiff home for the day until he could determine the appropriate course of action. Bowers' Dep. at 16. Bowers then told Plaintiff to "punch out for the day" and go home. Pl. 's Dep. at 139- 42. Plaintiff does not dispute that she was sent home for the day. Pl.'s Dep. at 141- 43.

McDonough testified that he made the decision to terminate Plaintiff based upon the conversation he had with Bowers on the day of the incident, and based upon the written statements of three employees of store 93 who were present in the store on the day of the

incident.[1]  McDonough Dep. at 5, 8, 17.

Deborah Wiley, Manager of Health and Beauty Aids, and General Merchandise stated:

> I came into office (sic) to get an ordering gun & [Plaintiff] said to me, "you are taking your life into your own hands by coming in here."  I asked why, and she said, "Didn't you hear me and [Bowers] yelling at each other?"  I said, "No."  I said to her that she'd better be careful how she talks or she'll get sent home.  She said, "good."  Then I started to leave the office.  Before I left the office, she also said that she's gonna punch him [Bowers] in the face if he comes in the office again.

Statement of Deborah Wiley, Pl.'s Ex. "G".

Susan Snyder, Assistant to the Manager of Health and Beauty Aids and General Merchandise stated that "whoever [Plaintiff] was talking to on the phone after [Lauer], she said she just wanted to punch [Bowers] in the face."  Statement of Susan Snyder, Pl.'s Ex. "H".

Megan Scheuring, Scanning Coordinator stated:

> I walked past Kyle Bowers and the customer at register 2 or 3.  I walked into the office to drop off a paper and asked [Plaintiff] what was going on.  She told me that the customer comes in on a weekly basis looking to buy change from her and she's tired of it.  [Plaintiff] said that she told the man before that we don't get deliveries of change until a Wednesday so the safe was empty.  She then called the man something along the lines of a black son of a bitch.  She then got on the phone with Deb Lauer and repeated the same thing.  [Plaintiff] then called [Bowers] up to the office to talk to Deb Lauer and she threw the phone at him and was screaming at him.  At this point I left the office.

---

[1]  Plaintiff does not dispute that these three witnesses gave the statements as outlined above, but Plaintiff does dispute that the witnesses gave accurate accounts of what transpired.  I have considered this evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to Plaintiff.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) *(citing U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962));  *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).  These statements are referenced herein to show the bases upon which Defendant reached its decision to terminate Plaintiff.

Statement of Megan Scheuring, Pl.'s Ex. "I". As noted above, McDonough reviewed these three statements in reaching his decision to terminate Plaintiff.

On May 14, 2008, the day following the change incident with the customer and the argument between Plaintiff and Bowers, store director Eshbach received a phone call from McDonough. Eshbach Dep. at 13. Eshbach testified that McDonough told him that Plaintiff was to be terminated. McDonough directed Eshbach to call Plaintiff to inform her that she was fired, and to complete the necessary paperwork. *Id.* Plaintiff testified that Eshbach called her at home and told her that she had been terminated by the main office. Pl.'s Dep. at 138-39.

**B.      The "Sex Toy" Incident**

A few months before her termination, Plaintiff alleges that grocery manager Bowers engaged in inappropriate conduct in violation of Defendant's policy against sexual harassment. Pl.'s Amended Complaint at 5. Specifically, Plaintiff asserts that an incident occurred in the bookkeeper's office in store 93 whereby Bowers "repeatedly approached [her] with a sex toy and said 'I have something in my hand for you." *Id.* The item at issue was a small plastic penis-shaped object, which Plaintiff described as "about an inch or so long, pink with two testicles on it down at the bottom of it." Pl.'s Dep. at 191. Plaintiff testified that an employee of the store had a "sex toy" party that other employees of the store had attended, and one of the employees brought the item to the store. Pl.' Dep. at 194-95.

Plaintiff testified that Bowers approached her with the object cupped in his hand and said "Here, I have something I want to show you." Plaintiff said, "No, I don't want it. I know what's in there; I heard about it, I don't want it." Pl.'s Dep. at 201-202. Plaintiff testified that Bowers continued to try to get her to take the item, but that each time she declined saying "I know what

7

you have, I'm not interested." Pl.'s Dep. at 206. Finally, after approximately 5 minutes of this back-and-forth, Plaintiff testified that she opened her hand and Bowers put the item in her hand. *Id.* at 207. Plaintiff states that she then threw it on a desk. Pl.'s Dep. at 207. Plaintiff states that store manager Cavalieri was in the office with her and Bowers at the time of this incident, but Cavalieri did not intercede while the incident was occurring. Once Plaintiff had thrown the object on the desk, Cavalieri instructed Bowers to "Put it away." Pl.'s Dep. at 207. Bowers then threw the item away. *Id.* Bowers similarly testified that Cavalieri saw the toy penis, and that at some point he told Bowers to, "Just throw it away." Bowers' Dep. at 26-27, 31.

Plaintiff testified that the next morning she reported this incident to Lauer when Lauer made her daily visit to the store. Pl.'s Dep. at 208-209. Plaintiff told Lauer that Bowers had obtained the object from store employee named Marlene, and it was gross and disgusting. Pl.'s Dep. at 209. Plaintiff testified that she did not make a formal written sexual harassment complaint, but that nonetheless she believed that her discussion with Lauer constituted a complaint of sexual harassment. Pl.'s Dep. at 210.

Lauer testified that she did not recall discussing this incident with Plaintiff. Lauer Dep. at 22-23. Lauer also testified however that it was her understanding of Defendant's sexual harassment policy that an employee could come to her to make a complaint for sexual harassment. *Id.* at 23. According to Lauer, she was unaware that Bowers had displayed a toy penis at Store 93 until McDonough so advised her, after Defendant's received notice that Plaintiff had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 25, 2008. Lauer Dep. at 33; Pl.'s First Amend. Compl. at 1-2.

## III.    STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party.  *Id.* at 248-29.  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) *(citing U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962));  *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  *Anderson,* 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions.  *Trap Rock Indus. v. Local* 825, 982 F.2d 884, 890 (3d Cir. 1992);  *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  Instead, the non-moving party

must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden. *Celotex Corp.*, 477 U.S. at 322-23.

## IV. PLAINTIFF'S CLAIMS

### A. Sex Discrimination

Plaintiff first alleges that she was discriminated against on the basis of sex in violation of Title VII and the PHRA.[2] "Title VII and the PHRA both prohibit an employer from engaging in . . . gender discrimination against an employee." *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 318 (3d Cir.2000). To prevail on a claim for discrimination, a plaintiff must show that "the protected trait actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 .(2000). This showing that a protected trait had a determinative influence on the decision of the employer can be made either through the use of direct evidence or circumstantial evidence. *Id.*; *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

A claim for discrimination based upon direct evidence must meet the standard set out in

---

[2] The PHRA "is construed consistently with interpretations of Title VII." *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995); *Atkinson v. LaFayette College*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims."); *see also Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir.1996) (PHRA is interpreted in accord with Title VII). Thus, Plaintiff's claims will be analyzed under Title VII, and the conclusions will apply equally to his PHRA claims. *See Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 n. 3 (3d Cir.2000).

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). Under *Price Waterhouse,* direct evidence is evidence that would be "sufficient to allow the jury to find that decision makers placed a substantial negative reliance on Plaintiff's age [and or race]." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 (3d Cir. 2002). This requires that a plaintiff present evidence of "discriminatory attitudes" that were causally related to the challenged employment decision. *Glanzman*, 391 F.23 at 512. If direct evidence is presented the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have taken the same action even if it had not considered Plaintiff's age or race. *Id.* at 338 (citing *Price Waterhouse*, 490 U.S. at 265-266).

If there is no direct evidence of discrimination, a plaintiff may present circumstantial evidence of discrimination. *Fuentes*, 32 F.3d at 764. If circumstantial evidence is presented, plaintiff must satisfy the standard set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Embrico v. U.S. Steel Corp.*, 245 F. App'x. 184, 187 (3d Cir. 2007); *See Glanzman*, 391 F.3d at 512. In the instant matter, Plaintiff has not presented direct evidence of discrimination, and in fact concedes that she "has offered indirect evidence of discrimination." Thus, this case is analyzed under the *McDonnell Douglas* framework.[3] *See* Pl.'s Resp. to Mot. for Summ. J. at 21.

---

[3] In *Price Waterhouse*, the Supreme Court stated that direct evidence of discrimination must demonstrate that:

> decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision .... [T]he plaintiff must produce evidence sufficient to show that an illegitimate criterion was a substantial factor in the particular employment decision such that a reasonable factfinder could draw an inference that the decision was made "because of" the plaintiff's protected status. Only then would the burden of proof shift to the defendant to prove that the decision would have been justified by other, wholly legitimate considerations.

*Price Waterhouse*, 490 U.S. at 277. A plaintiff confronts a "high hurdle" in attempting to prove

*McDonnell Douglas* requires that a plaintiff show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated persons who are not members of the protected class were treated more favorably. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999).

Once a plaintiff meets the *McDonnell Douglas* test, the burden of production shifts to the employer who must come forward with a legitimate, nondiscriminatory reason for the adverse employment decision. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000) (*citing Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981)). If a defendant offers a legitimate, non-discriminatory reason for their actions, Plaintiff survives summary judgment by "present[ing] sufficient evidence to raise a genuine issue of fact as to whether the defendant's proffered reasons were not its true reasons for the challenged employment action." *Stewart v. Rutgers*, 120 F.3d 426, 433 (3d Cir.1997); *see also Jones*, 198 F.3d at 413. Thus, a plaintiff survives summary judgment by proffering "admissible evidence [ ] that the employer's articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer's real reason," or by "pointing to evidence in the record which allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Jones*, 198 F.3d at 413.

If the defendant meets this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination. *Jones*, 198 F.3d at 410 (*citing Burdine*, 450 U.S. at 252-53). To establish

discrimination by direct evidence. *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 248 (3d Cir. 2002) (*quoting Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir.1998)).

pretext, a plaintiff must point to some evidence from which a fact finder could either: (1) disbelieve defendant's articulated legitimate business reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employers action." *Fuentes,* 32 F.3d at 764. To discredit a legitimate reason proffered by an employer, a plaintiff must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's preferred legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 765.

In attempting to discredit a defendant's proffered reasons, however, a plaintiff cannot simply show that the defendant's decisions were wrong or mistaken. The inquiry is whether the defendant was motivated by discriminatory animus, not whether the defendant was wise, shrewd, prudent or competent. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir.1996) ("federal courts are not arbitral boards ruling on the strength of the 'cause' for the [adverse employment action]. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination."); *see also Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir.1992). Therefore, "the plaintiff must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller,* 130 F.3d at 1109.

Significantly, the ultimate burden of persuasion always remains with the plaintiff, and the ultimate question is whether, after all the evidence is in, the plaintiff has proven his case by a preponderance of the evidence. *Aikens*, 460 U.S. at 711. Even during the "pretext" analysis, the employer has no burden to prove that its proffered reasons are true; rather, the plaintiff must

prove by a preponderance of the evidence that the proffered reasons are pretextual.  *Burdine*, 450

U.S. at 256.

Defendant does not dispute that Plaintiff is a member of a protected class, nor does

Defendant dispute that Plaintiff suffered an adverse employment decision.  Defendant argues that

Plaintiff was not qualified for the position she held, and she cannot show that similarly situated

persons, not members of the protected class, were treated more favorably than she.

In support of this argument, Defendant asserts that although Plaintiff was "qualified" for

the position she held "in terms of her education and experience," she was not qualified for this

position based upon her "lack of judgment" and lack of "willingness to act in accordance with

the reasonable, lawful directives of workplace superiors, and to handle disputes with supervisors

privately and respectfully, using the chain of supervisors to resolve any problems."  *Id.*

Plaintiff argues that in order to be "qualified" for a position for purposes of a *prima facie*

case of discrimination, a "plaintiff is only required to show that she possessed the objective

qualifications for the position at the time of the termination of her employment."  *See* Pl.'s Resp.

to Mot. for Summ. J. at 23 (*citing Weldon v. Kraft Inc*., 896 F.2d 793, 798 (3d Cir. 1990).

Plaintiff asserts that she meets this standard, as she held the position of bookkeeper with

Defendant for 13 years; she was named "employee of the year" twice during that time; and she

received a "glowing review from her immediate supervisor in her last performance evaluation."

*Id.*

I find that Plaintiff was qualified for the position she held.   I reject the contention that

Plaintiff was not qualified for the position she held because she lacked judgment.  As Plaintiff

points out, the proper inquiry is whether Plaintiff was objectively qualified for the position she

held.  *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir.1995) ("We determine a plaintiff's qualifications for purposes of proving a *prima facie* case by an objective standard") (*citing  Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir.1990);  *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir.1989).  Petitioner served as bookkeeper for 13 years; she received training from Defendant when she was initially hired in 1993, Pl.'s Dep. at 24-26, and continued to receive training relative to her position throughout her tenure.  *Id.* at 32.  Further, Defendant conducted a performance review of Plaintiff's work annually and never found that she was performing poorly or lacking in any objective criteria related to her job duties.  Indeed, Plaintiff was named employee of the year on two occasions.

Moreover, the Third Circuit has consistently held that any question regarding a plaintiff "subjective" qualifications, such as lack of judgment, should be not be considered at the first stage of the *McDonnell Douglas* analysis, but should be considered in the second and third stages.  *Fowle v. C & C Cola*, 868 F.2d 59, 64 (3d Cir. 1989); *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 939 (3d Cir. 1997) ("subjective evaluations 'are more susceptible of abuse and more likely to mask pretext' and, for that reason, are better examined at the pretext stage than at the prima facie stage").  Consequently, for purposes of establishing a prima facie case, I find that Plaintiff was qualified for the position she held.

Defendant next argues that Plaintiff cannot establish that similarly situated persons, not members of the protected class, were treated more favorably.  Plaintiff argues that the similarly situated person that was treated more favorably than her was store manager Kyle Bowers.  Specifically, Plaintiff argues that Bowers, a male, was treated more favorably "both during investigation of the change incident and previously when he clearly violated Defendant's

workplace rules regarding harassment."  Pl.'s Resp. to Mot. for Summ. J. at 23.

In respect to the change incident, Plaintiff asserts that Bowers violated the store's change policy by giving the customer the change he requested, and he was never disciplined for violating that policy.  *Id.*  Plaintiff asserts that she was treated less favorably than Bowers because she was terminated as a result of this same incident.  *Id.*  Similarly, Plaintiff argues that Bowers was treated more favorably when he was not terminated for violating Defendant's policy against sexual harassment, but she was terminated for violating Defendant's policy against insubordination.  Plaintiff argues that because both she and Bowers violated company policy, the result should have been the same: they both should have been terminated.

As a preliminary matter, I note that Plaintiff and Bowers are not similarly situated individuals.  The Third Circuit has repeatedly held that the "comparators" that an employment Plaintiff relies upon must be individuals engaged in the same conduct as Plaintiff, and that they shared in common all relevant aspects of his employment.  *See Gazarov ex rel. Gazarov v. Diocese of Erie,* 80 F. App'x 202, 206 (3d Cir.2003) (noting that individuals are similarly situated only where they engaged in "the same conduct"); *Red v. Potter*, 211 F. App'x 82, 84 (3d Cir.2006) (*citing Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir.2003) ("plaintiff must show that others similarly situated to him in all relevant respects were treated differently by the employer") and *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994) ("plaintiff must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the . . . employees who he alleges were treated more favorably")); *Morris v. G.E. Fin. Assurance Holdings*, No. 00-3849, 2001 WL 1558039, at *6 (E.D.Pa. Dec.3, 2001) ("individuals with whom the plaintiff seeks to compare [his] treatment must have dealt with the

same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it") (internal quotations omitted).

Applying this standard, it simply cannot be said that Plaintiff and Bowers were "similarly situated." Plaintiff was a bookkeeper and at-will employee in Defendant's Store 93. Bowers (also an at-will employee) is the grocery manager of Store 93 and Plaintiff's supervisor. Bowers functioned as third-in-command at Redner's Store 93, meaning that on occasion (such as the day of the "change incident") he was the highest ranking employee at the store. Bowers job responsibilities within the store are in no way similar to that of Plaintiff. *See Blanding v. Pa. State Police*, 12 F.3d 1303, 1309 (3d Cir.1993) (probationary trooper who had served less than one year not similarly situated with tenured troopers who had served fifteen and four years, respectively); *Stove v. Phila. School District*, 58 F.Supp.2d 598, 602-03 (E.D.Pa.1999) (school custodial assistant not similarly situated to school's building engineer); *Davis v. Potter*, 2007 WL 2572365 (D.N.J. 2007) (employees were similarly situated, because they shared identical job titles and descriptions).

Further, the specific incidents at issue and Plaintiff and Bowers roles in relation to those incidents are not similar. Plaintiff alleges that Bowers should have been disciplined as she was in relation to the customer change incident. Even assuming that Bowers violated store policy by countermanding her decision to refuse the customer change, his decision to give the change is in no way a similar violation of store policy as Plaintiff's insubordination in relation to that decision. Indeed, it is debatable that Bowers actions were even a violation of store policy. Defendant did not have a written policy regarding whether or not to provide a customer with

17

change.  McDonough Dep. at 35-36.  It is also undisputed that the discretion to provide change or not was left to the individual store and more specifically the store manager.  *Id.*  In a situation such as this, it is reasonable to conclude that the manager on duty at the time would certainly possess the authority to provide a customer with the change he requested.

The circumstances as related to Plaintiff are clearly different.  The customer, who had been denied change by Plaintiff, specifically requested to speak to someone above her in the store chain of command.  Plaintiff, herself, recognized that this person was Bowers, and she called Bowers to the front of the store to speak to the customer.  The fact that Plaintiff disagreed with Bowers' decision to provide the customer with the change he requested does not transform this decision into a violation of store policy, nor does it justify her angry and combative response to this decision.

Similarly, Plaintiff argues that she was treated less favorably than Bowers when she was terminated for insubordination, while Bowers was not disciplined for violating Defendant's sexual harassment policy.  Again, the allegations of sexual harassment involving manager Bowers are in no way similar to the allegations of insubordination involving Plaintiff.  The "sex toy" incident was a one-time, short-lived incident, that was addressed on-the-spot by Cavalieri, who instructed Bowers to dispose of the item.  In contrast, based upon what McDonough knew, the "change incident" involved an employee (Plaintiff) yelling at a manager (Bowers) within the hearing of other employees; threatening to use violence against the manager; and using insulting and derogatory language in discussing a customer.[4]  I find that these two incidents are markedly

_____

[4]  As noted above, Plaintiff disputes that she yelled at Bowers in the hearing of anyone else, denies that she threatened physical violence against Bowers, and denies that she used racially derogatory language in discussing the customer.  However, there is no dispute that other

18

different.

Plaintiff's argument boils down to the contention that each and every incident of violation of store policy, regardless of the particular facts or circumstances of such "violation," must be treated exactly the same, lest the employer face at Title VII claim when the transgressor belongs to a protected class. This is simply not the case. The conduct for comparison must be without such differentiating or mitigating circumstances that would distinguish each actor's conduct or the employer's treatment of them for such conduct. *See Bullock v. Children's Hosp. of Philadelphia*, 71 F.Supp.2d 482, 489 (E.D.Pa.1999). Certainly, an employer may take into account the severity of each incident, and may consider factors such as how an incident impacts other employees and/or customers. I find that Plaintiff cannot establish a *prima facie* case for sex discrimination and this claim will be dismissed.

Even accepting that Plaintiff has stated a valid *prima facie* case of discrimination, Defendant has presented a legitimate nondiscriminatory reason for Plaintiff's termination which Plaintiff has failed to establish was a pretext for discrimination. *Fuentes* , 32 F.3d at 764. As stated above, it does not matter whether or not Defendant's decision was "wrong or mistaken;" the proper inquiry is "whether discriminatory animus motivated" the decision to terminate Plaintiff. *Id.* There is simply no evidence on the record to establish that Defendant was

---

employees reported such conduct by Plaintiff. It is not the place of the Court to "sit as a super-personnel department" over the employment decisions of a business. *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir.1995). The evidence offered by the Plaintiff demonstrates, at most, that the McDonough erred in his determination that the written statements of Wiley, Snyder and Scheuring should be given credence. That alleged error in judgment is not the equivalent of racially discriminatory motivation or influence. *See Sulit v. Federal Reserve Bank of Philadelphia*, 2009 WL 2776480 (E.D Pa., Aug. 28, 2009).

motivated by discriminatory animus.

**B.    Age Discrimination**

Plaintiff also alleges that she was improperly terminated from her position based upon her age.  The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2350 (2009) (citing 29 U.S.C. § 623(a)(1)).  In *Gross*, the Supreme Court modified the burden shifting framework in cases alleging age discrimination in violation of the ADEA.  *Id.*  The Court held that the mixed-motive doctrine enunciated in *Price Waterhouse* is not available to a plaintiff in an age discrimination claim and that a plaintiff must show that an employer made an adverse employment decision because of a plaintiff's age.  *Id.*  The Court held that in an age discrimination case a "plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action."  *Id.* at 2351.

Subsequent to *Gross*, the Third Circuit has held that the *McDonnell Douglas* framework continues to apply in this circuit; thus, Plaintiff's claim will be analyzed under that standard. *Smith v. City of Allentown*, 589 F.3d 684, 690-92 (3d Cir. 2009) ("*Gross,* which prohibits shifting the burden of persuasion to an ADEA defendant, does not forbid our adherence to precedent applying *McDonnell Douglas* to age discrimination claims).  Thus, plaintiff must show that he: (1) is over forty years old; (2) is qualified for the position in question; (3) suffered an adverse employment decision; and (4) was replaced by a sufficiently younger person to permit an inference of age discrimination.  *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 330

(3d Cir. 1995); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 698 (3d Cir.1995). "[T]he prima facie case under the *McDonnell Douglas* pretext framework is not intended to be onerous." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir.1995) (*citing Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

If Plaintiff is able to establish a prima facie case, the burden then shifts to Defendant to provide evidence that Plaintiff was not promoted to the positions at issue for reasons that are legitimate and nondiscriminatory. *Burdine*, 450 U.S. at 254. This burden is deemed satisfied if the employer introduces evidence that, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the challenged employment decision. The employer is not required to prove that this nondiscriminatory reason actually motivated the action in order to shift the burden back to the plaintiff. *Fuentes*, 32 F.3d at 763. If defendant proffers reasons that it believes are legitimate and nondiscriminatory, the burden shifts to Plaintiff to show that these reasons are pretexual. *Id.*

The standard for determining pretext was set forth by the Third Circuit in *Fuentes*. To defeat summary judgment, the plaintiff must either: (i) discredit the proffered reasons, either circumstantially or directly; or (ii) adduce evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. *Fuentes*, 32 F.3d at 764. A successful showing of pretext must "allow the factfinder reasonably to infer that each of the employer's proffered nondiscriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Id.* A plaintiff may not establish pretext by simply showing that the employer's decision was wrong or mistaken, because the main issue is whether the employer acted in a discriminatory

manner.  *Id.* at 165.  Defendant maintains that there was a legitimate, non-discriminatory reason for not awarding any of the disputed positions to Plaintiff, and in no instance was Plaintiff denied a position based upon his age.

Defendant does not dispute that Plaintiff was over forty years old at the time she was terminated from her position; that she suffered an adverse employment decision; and that the person who replaced her was younger than Plaintiff.  *See* Defendant's Mot. for Summ. J. at 23. As above, Defendant disputes that Plaintiff was qualified for the position she held.  *Id.*

I find that Plaintiff can establish a prima facie case for age discrimination in regard to this position.  Plaintiff was over forty years old at the time she was terminated from her position; as noted above, she was qualified for the position; she suffered an adverse employment decision; and the individual chosen for the position was sufficiently younger than Plaintiff.[5]  *Brewer*, 72 F.3d at 330.

Since Plaintiff has established a prima facie case of age discrimination, I must consider whether Defendant has advanced a "legitimate, nondiscriminatory reason" for Plaintiff's termination.  *McDonnell Douglas*, 411 U.S. at 802.  As discussed above, Defendant's proffered reason for terminating Plaintiff was her conduct relating to the incident involving the customer requesting change, and the subsequent argument with store manager Bowers.  Specifically, Defendant states that Plaintiff "refused to follow legitimate management directives and screamed and swore at Bowers and publicly challenged his authority."  Def.'s Mot. for Summ. J. at 23.

I find that Defendant has presented evidence that would permit the conclusion that there

---

[5]  Plaintiff was replaced by a woman in her thirties who was transferred into Plaintiff's position from one of Defendant's other stores.  Eshbach Dep. at 26; McDonough Dep. at 25.

was a non-discriminatory reason for the challenged employment decision. *Fuentes*, 32 F.3d at 763. As noted above, to defeat a motion for summary judgment, a plaintiff must either discredit the employers proffered reasons, or adduce evidence that discrimination was more likely than not a motivating or determinative cause for the employers challenged action. *Fuentes*, 32 F.3d at 764. Plaintiff has not presented evidence that Defendant's reasons for terminating her are pretextual, or that age was the "but for" causation for this decision. *Id.*; *Gross*, 129 S.Ct. at 2351. In fact, Plaintiff has presented no evidence whatsoever that would indicate that her age was ever considered in the decision to terminate her. Since Plaintiff cannot point to evidence discrediting Defendant's proffered legitimate reasons for terminating her employment, she cannot satisfy the first prong of the *Fuentes* analysis. Therefore, Plaintiff has failed to satisfy her burden of production under the *McDonnell Douglas* analysis, and this claim will be dismissed.

## C.     Retaliation

In addition to her sex and age discrimination claims, Plaintiff also alleges that she was subject to unlawful retaliation after making a sexual harassment complaint against Bowers in February 2008.

Plaintiff's retaliation claim is also governed by the *McDonnell Douglas* burden-shifting framework. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir.1997); *see also Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir.2005) (noting that in the absence of direct evidence of retaliation, retaliation claims under the ADEA and the PHRA ordinarily proceed under the *McDonnell Douglas* framework). To advance a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in an activity protected by Title VII; (2) the employer took a "materially adverse" employment action; and (3) a causal connection exists between the

employee's protected activity and the adverse employment action. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir.2006); *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir.1997); *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir.2007).

If an employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir.1997). The employer's burden at this stage is "relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]." *Id.* at 500-501 (*quoting Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n. 2 (3d Cir.1997).

If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action. *Krouse*, 126 F.3d at 501; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) ("It is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."). The plaintiff must prove that retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process. *Woodson v. Scott Paper Co.*, 109 F.3d at 931-35. The burden of proof remains at all times with the plaintiff. *Id.* at 920 n.2.

In this case, there is insufficient evidence to support a *prima facie* case of discriminatory retaliation. Here, considering the evidence in the light most favorable to the Plaintiff, I find that she has satisfied the first element, in that the she testified that she made an oral complaint of sexual harassment to Deb Lauer, an activity protected by Title VII. Plaintiff also satisfies the

24

second element, because the termination of her employment constitutes a "materially adverse" employment action. However, to establish a *prima facie* case for retaliation, Plaintiff must also demonstrate a causal connection between her protected activity and the adverse employment action.

To establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Krouse*, 126 F.3d at 503-04; *Woodson*, 109 F.3d at 920-21. In assessing a causal connection, a reviewing Court must consider "the specific facts and circumstances encountered." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n. 5 (3d Cir.2000). Evidence probative of a causal link can be inferred from evidence "gleaned from the record as a whole." *Id.* at 281.

In the instant matter, Plaintiff argues that there is an unusually suggestive temporal proximity between her complaint of sexual harassment and her termination. Pl.'s Resp. to Mot. for Summ. J. at 34. Plaintiff further argues that an "inconsistent rationale for the termination coupled with temporal proximity . . . is sufficient to demonstrate a causal nexus in a retaliation claim." *Id.*

Plaintiff asserts that she made a complaint of sexual harassment in February 2008,[6] and that she was improperly terminated from her position on May 13, 2008. Thus, approximately 3

---

[6] There is some dispute as to when the "sex toy" incident occurred. Plaintiff asserts that the incident occurred in February 2008, while Defendant and Bowers assert that the incident occurred on January 22, 2008. Bowers asserts that he remembers the date because he won a prize in the Pennsylvania Lottery on that date and was in the bookkeeper's office in order to claim his prize. *See* Defendant's Mot. for Summ. J. at 7, N. 3. Plaintiff conceded at oral argument however, that a dispute over the timing of the incident is "just not important to the facts" of the case. *See* Transcript of Hearing at 36-37.

months elapsed between her complaint and her termination. The Third Circuit has held that "temporal proximity between the protected activity and the termination is [itself] sufficient to establish a causal link." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir.1997). However, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Krouse*, 126 F.3d at 503; *see also Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir.1997). Here, Plaintiff has not presented any evidence that suggests that Defendant's decision to terminate her was in any way "unusually suggestive" or linked in any way to her sexual harassment complaint. Absent evidence of intervening antagonism or retaliatory animus, the passage of time in this case is conclusive and Plaintiff cannot show temporal proximity. *Krouse*, 126 F.3d at 503-04.

To be sure, Plaintiff expresses her belief that she has been retaliated against, yet she herself testified that she has no evidence to support such a claim.

> **[Defense Counsel]:** What information or fact do you have to give me today that connects your oral comments or complaint to Deb Lauer days after the penis presentation event to your termination? What information do you have, what fact do you have that relates the two events in any way, if any?
>
> **[Plaintiff]:** I believe that he may have retaliated because I went and told Deb.
>
> **[Defense Counsel]:** I know that's what you believe, but my question was what fact do you have that makes that - - other than the event occurring in May, meaning you were fired in May, and

sometime, as you recall in February there was a penis event.  Do

you have a statement from someone who says that Kyle Bowers

had it in for you for making those comments to Deb Lauer about

the penis toy?

**[Plaintiff]:**  No.

**[Defense Counsel]:**  Do you have any written document, an e-mail

or any evidence whatsoever, other than your belief, that

substantiates your belief that the penis comments, the comments to

Deb Lauer in the February time frame were related in any way to

your termination?

* * *

**[Plaintiff]:**  No.

**[Defense Counsel]:**  I already asked you repeatedly if you have any

evidence, other than your belief, that connects what you've alleged

in your complaint, which is I complained to Deb Lauer about a

penis toy that I was concerned about and offended me in the

workplace.  That happened in February correct?

**[Plaintiff]:**  Correct.

**[Defense Counsel]:**  Other than your belief that those two events

were related, what other evidence do you have?

* * *

**[Defense Counsel]:**  If any.

> **[Plaintiff]:** I have no evidence.

Pl.'s Dep. at 217-19. Thus, Plaintiff speculates that she was fired in retaliation for complaining about Bowers' conduct, but such speculation clearly is not legally sufficient evidence.

More significantly, Plaintiff fails to establish that anyone involved in the decision to terminate her even knew that she had made a sexual harassment complaint. Plaintiff testified that she believed that the people involved in her firing included: Director of Human Resources McDonough, and Front office employee Lauer. Pl.'s Dep. at 136-37. McDonough, however, testified that he was solely responsible for Plaintiff's termination, and he did not know that Plaintiff had ever filed a complaint of sexual harassment when he made the decision to terminate her. McDonough testified that he only became aware of Plaintiff's complaint for sexual harassment when he received notice that Plaintiff had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 25, 2008, almost four months after she had been fired. Deb Lauer, the person to whom Plaintiff testified she made the complaint, stated that she had no memory of Plaintiff making a complaint with her. More significantly, however, Lauer played no part in the decision to fire Plaintiff. Lauer Dep. at 18-19, 27. Lauer, in fact, testified that she informed Plaintiff that she would "go to bat for her" provided that it was only a matter of Bowers and Plaintiff "having a hard time." Lauer Dep. at 18.

Plaintiff cannot defeat Defendant's motion for summary judgment by merely asserting that the decision to terminate her was based upon a retaliatory motive. Plaintiff "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. at 256-57. There is no evidence that anyone in a decision making role within Defendant's organization knew of Plaintiff's sexual harassment complaint to

Lauer, nor is there evidence that this complaint factored into the decision to terminate her. Therefore, Plaintiff has presented no evidence to establish a connection between her complaint for sexual harassment and the decision to terminate her. Absent such a connection, there can be no retaliation under Title VII. Accordingly, this claim must be dismissed.

## V.    CONCLUSION

Controlling Supreme Court and Third Circuit precedent mandate the entry of summary judgment in favor of Defendants as to all claims. The evidence is simply insufficient to allow this case to proceed to a jury trial. Accordingly, the Court grants summary judgment in favor of Defendant and against Plaintiff as to all claims. An appropriate Order follows.

BY THE COURT:

 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI,
UNITED STATES MAGISTRATE JUDGE